320176 Prairie Surgicare, LLC v. Encompass Specialty Network. May it please the court. My name is Nino Perjul and I represent the appellant Prairie Surgicare, LLC. The question here is whether the trial court erred when it denied Surgicare's motion for the fundamental principle of law the trial court overlooked is that a party's honest belief can't override its duty to investigate the facts and the law before submitting a file. The fundamental fact the trial court overlooked is that before filing a single motion in this case Encompass knew the agreement on which it permits its right to stay discovery, to had been terminated and couldn't possibly apply to a dispute for a suit on a check for this particular patient. It had been terminated before the patient was treated. It had been terminated before the check was issued. No court could reasonably conclude that a party can use an inapplicable and terminated agreement to seek affirmative relief. And that's precisely what the court did here and that's precisely why it requires reversal. In a nutshell, this dispute concerns Encompass's decision back in September 2018 to stop payment on a check issued to Surgicare for patient TM's June 2018 treatment. Those charges were approved by a workers' compensation claims administrator by the name of TriStar Risk Management. Encompass is a payment agent for TriStar. TriStar is the claims administrator for the state of Illinois, the employer for the patient TM. With its very first pleading, its answer, Encompass violated rule 137. It asserted an affirmative defense without a basis in fact or law across different agency relationships, across different patient relationships. Now, all Encompass had to do to determine whether or not a contractual right of setoff applied to this case when it received Surgicare's petition was look at its records and determine two things. Did a contract apply? Was it in force? Had it done that, we wouldn't be here. Instead, it asserted that setoff defense and it was premised on Illinois common law, but had Encompass researched Illinois law, it would have realized it wasn't entitled to a setoff because it's only appropriate in two circumstances, none of which applied here. The first, Surgicare would have had to have done something to impair Encompass's obligation to pay on this particular check, and it hadn't. The second, a third party would have had to pay Surgicare for the same amounts due for patient TM's treatment, and that hadn't happened. And to be clear, Encompass has never, not before this court, not before the lower court, cited a single case that permits using setoff in the manner it pled. As far as Surgicare is aware, there isn't such a case. So Surgicare, once we received that answer, we sought to explore the factual and legal underpinnings of that defense, and so we issued discovery. In turn, Encompass sought and received three different extensions of time. Each time, Encompass claimed, you know, we're finalizing responses, we've got discovery in hand, give us a second, we'll get it to you. August 14th, 2019 comes around. Encompass's extension of time is about to expire, and they actually write to Surgicare claiming that they had now found an inapplicable contract and that they were now entitled to arbitration. I put air quotes around found because the contract that they referenced was both not with the relevant entity, it was with a sister entity, and also had previously been used in pre-suit correspondence six months before we filed suit by Encompass. And in any event, Encompass knew because in that same letter it admitted that all contracts were terminated effective May 23rd, 2018. And again, patient TM was treated and payment was issued after that date. Now, Encompass had yet to file a single motion in this case, and Surgicare explained, hey, look, one, this is an inapplicable contract, but more importantly, even if there was some sort of applicable contract, they were all terminated before the dates of treatment before payment was issued. And, you know, we received no response to that. Two weeks later, because we hadn't received any responses to discovery, we filed a motion to compel discovery. A month after Surgicare found out that Encompass knew that these agreements had been terminated, it then claimed to have found a different agreement, this time with the right entity, that also would have been terminated at the same time to assert a right to dismiss or stay this action. Two and a half months later, it filed a motion for protective order in the state of discovery on the basis of the same inapplicable expired agreement, arguing that, quote, this dispute belongs in this court. Now, that correspondence I reference is in the record at C-299 to C-303, and that quote I just quoted is at C-233. Now, that same day, Encompass argued this dispute still belongs in this court, knowing they were relying on a with an affidavit attached that included, you know, a copy of that agreement. And yet, three days later, Encompass takes the entire dispute and files a complaint, a demand, excuse me, for arbitration before the AAA. So, on October 31st, 2019, four months after it told us it understood these agreements terminated before this patient was produced discovery and was now persistently seeking relief to which it wasn't entitled for this dispute over this patient. Now, that forced Surgicare to file motions in response, and ultimately, on November 6th, we had to file a request before the circuit court seeking a stay of that improperly filed arbitration. Then, on the eve of the party's November 14th, Encompass claimed to have re-evaluated the circumstances, and in turn said it would amend its complaint for arbitration as long as we accept the conditional tenant. But the facts hadn't changed since Encompass stopped payment back in 2018. They hadn't changed since Encompass filed its answer. They hadn't changed since the party's exchange discovery correspondence before Encompass filed a single motion, and they hadn't changed in the interim after two different motions filed by Encompass and that AAA arbitration filing. So, to bring it back to the trial court's ruling, the fundamental problem with the trial court's ruling is that it permitted a mistaken belief to override Encompass's duty to investigate the facts and the law before submitting a filing with the court. According to the trial court, it was enough that Encompass had reconsidered its position. But under Illinois law, a party can't hide behind ignorance. In letting them claim ignorance, the trial court actually failed to objectively review the record, and it missed that key fact, and it also didn't put its ruling in context, which is as follows. Let's not forget Encompass again initiated this stop payment in September 2018. Okay, so it presumably had a reason for doing so. It then sent two separate letters to Surgicare claiming it had a right to stop payment for patient TM on the basis of an agreement with a sister entity, Prairie Spine and Pain. They're separate entities. Surgicare explained that agreement couldn't apply, and presumably at that time, Encompass had the opportunity to investigate the facts, assemble the relevant documents, before it issued the correspondence. But even if Encompass hadn't been as thorough as it should have been six months before suit was filed, once Surgicare filed suit, Encompass had an opportunity to investigate its records and the law yet again. For example, while preparing its answer, we filed suit in March of 2019, and Encompass actually received an extension of time to file its answer, which was filed in late May, I believe. If it hadn't yet investigated the facts and the law while preparing its answer, it yet again had an opportunity while preparing discovery responses. Again, we granted three different extensions of time. And had Encompass had its head in the sand that entire time, on August 14, 2019, when Encompass admitted these agreements have been terminated effective May 23, 2018, it should have known that it couldn't use a terminated agreement to seek arbitration for this dispute over this patient. And yet, that's precisely what it did. And it had all those opportunities before a single motion was made. Encompass had an opportunity as late as October 28, 2019, once Surgicare filed Dr. Kuby's affidavit explaining the facts and attaching that termination notice. Before the trial court at the hearing, Encompass claimed once it found out it immediately changed position, but that's not the case. Because Encompass knew on August 14 and didn't change its position. It knew October 28 and didn't change its position. In fact, November 1, it filed a pleading before the AAA claiming the entire dispute belonging to arbitration yet again. So, in this instance, an objective review of the record shows that at every step of the way, Encompass failed to properly investigate its own records. It even ignored Surgicare's pleas and had every opportunity to do so to change its position, but never did. Well, excuse me, it did it ultimately, but before November 15. And the record shows that this idea of a mistake is an after-the-fact explanation. For one, Encompass has given alternate explanations of when it found out. On the one hand, during a search for responsive documents, on the other hand, during briefing on a motion to compel arbitration, motion to compel discovery, motion to stay discovery. Now, that briefing took place over three months, but frankly, it's not a mistake to find a contract you already knew existed that you had already used in pre-suit correspondence. It's not a mistake to later find a second contract that is also equally inapplicable to this dispute. And in any event, they knew it had been terminated and they persisted anyway. The point here is that had a proper investigation been taken, Encompass could never have taken the position that the dispute regarding payment of Patient TM's check was properly arbitral. And in addition to that, the trial court's order was arbitrary and factually incorrect. For example, the trial court thought it would have been required that the attorneys for Encompass were working with AIG, the party to which Encompass was contracted. But Surgicare is aware of no precedent that holds the court has to consider why Encompass is pursuing a course of action. That's logical because ultimately Encompass is responsible for its own conduct, regardless of whose ends it serves. And the trial court wrongly claimed that Surgicare asked this court to order discovery, meaning the trial court, in a matter not related to this case. Surgicare asked to stay. Encompass asserted the Patient DS dispute into this dispute. And Surgicare was entitled to discovery about that affirmative defense. And Encompass proceeded to use an inapplicable agreement to try and arbitrate everything. So Surgicare was well within its rights. And that brings me to a final point. Rule 137 and the discovery rules are guardrails. They're designed to keep litigation cost effective. They're designed so Illinois citizens have a mechanism for resolution of straightforward disputes. Surgicare is a surgical suite. It receives countless of checks from third-party, fourth-party payors every day, oftentimes entities with whom it has no relationship. If every time it has to enforce a check that's properly, it's rightfully its, you know, that makes a mockery of the system, especially if it has to expend 70% of the cost of the total it seeks to do so. And it allows actors like Encompass to disrupt the very commerce and provisions of the UCC. They're designed to help, you know, things run smoothly and efficiently. And if I may just conclude, Your Honors. Thank you. You know, Encompass foisted these costs on us, and that's why we're seeking $60,391.47 in legal fees and costs. We respectfully request that this court conduct an objective review of the record and find that the circuit court erred when it denied Surgicare's motion for sanctions, award Surgicare's reasonable attorney's fees and costs, and penalize Encompass for its discovery in Rule 137 violations. Thank you. Good morning, and may it please the court. My name is Michael Hayes, and I represent the Defendant Appalee Encompass Specialty Network, LLC. The trial court's ruling here denying sanctions was well within the court's broad discretion under Rule 137 and clearly warrants affirmance under the abuse of discretion standard of review applicable today. While in counsel's briefs and in his opening remarks today, the appellant did not once confront the discretionary issues that are at the heart of this appeal. And we have two levels of discretion involved in reviewing what the trial court did here. The first level of discretion is inherent and expressed in Rule 137 itself. As this court well knows, Rule 137 grants a trial court broad discretion in reviewing matters brought to its attention under Rule 137 and can even find that a technical violation of the rule ensued, but still declined to award any kind of sanction, let alone a $60,000 award like that sought here. From the appellant's presentation this morning, we never once heard any discussion about that discretionary aspect that's fundamental that the trial court has and scores of cases by the Illinois appellate courts and the Illinois Supreme Court recognize the broad discretion that the trial court has. After all, the trial court is the person that refereed the fight that led to the sanctions issue and has the best sense of what party's conduct was intentional, what party's conduct fell below the pale, and whether an award of sanctions, even where as what happened here, based on a series of mistakes is warranted. As I mentioned, that discretionary concept that I was just describing in Rule 137 is then expanded on as the case becomes before this court. And this court in a range of circumstances applies an abuse of discretion standard. In the Rule 137 context, though, it's special in that the decision that the trial court issued that this court is reviewing on an abuse of discretion standard has discretion laid in the procedural rule itself. And for that reason that we have basically two discretionary levels of review involved, Illinois appellate courts, by my research, have only reversed denials of sanctions four times in cases that we could discern, again, out of scores of Rule 137 decisions in total. And the reason for that again, goes to the broad discretion afforded to the trial court to decide whether the conduct was so over the line, in most cases involved some sort of intention and misrepresentation to the court, which notwithstanding counsel's presentation and the adjectives that fill their briefs, was just not involved here. I would urge the court in reaching its decision to take a look at the couple of cases that have been decided that reverse denials of sanctions and compare the conduct there with what is alleged here. All of those cases involved extreme egregious conduct that led to expansive, expensive proceedings. For instance, the Frimeric case, which is the primary case upon which the appellant here relies, the filing of a bad faith motion coupled with affirmative representations made by the plaintiff's lawyer to the trial judge in that resulted in a five-year subsequent period of litigation where the trial court was called upon to issue 21 separate orders. As you know, your honors, from the briefing here, my client realized within four or five months that it had mistakenly asserted a right to set off based on one of the two contracts that were entered into between my client and the two entities co-owned by this Dr. Kuby. And what my client did is upon recognizing that that contract was no longer in force, my client quickly corrected the prior filing that it made. It tendered 100% of the relief that the plaintiff sought in the case, and it unwound the two billing situations that had been intertwined such that the one involving that you've read about involving patient DS, where my client mistakenly paid nearly $100,000 to Prairie Surgicare and asked for the money back and was told it would not be returned. That dispute was unwound from this one and proceeded off to arbitration. And in this matter, having removed that issue from this case, the trial court worked with the parties. I strongly urge review of the February 26, 2020 hearing transcript to make sure that Prairie Surgicare received 100% of the relief it was entitled to in the case, and that the other dispute would not impair this one from being fully resolved. I'm sorry to interrupt, but you said that within four months, your client realized there was a mistake. How are you measuring that four-month period? I'm measuring it, Your Honor, from the time that my client filed its answer and asserted the defense, which I believe was May 22 of 2019. And in August of that same year, my client and counsel, as alluded to it, informed opposing counsel that there was a contractual but they shortly after that realized that they had the agreement with Prairie Surgicare. However, that agreement had been terminated. I'm just going to back you up a little bit because I really want to follow your argument. You're saying your answer was filed in March and by August? It was filed in, I'm sorry, Your Honor, it was filed in May. I'm sorry, okay. May, asserted the defense. And in August, my client and its counsel believed they had a contractual right to set off and they communicated that to opposing counsel who informed them that they were relying on the wrong agreement, the two entities, Prairie Spine versus Prairie Surgicare, but did not inform us at that time that there was a exact duplicate agreement with Prairie Surgicare, nor that that agreement had been terminated. Okay. So they realized the mistake on mixing up contracts, but they went on to make other mistakes, didn't they? Well, the only other mistake they made, Your Honor, was they sought to compel arbitration of both the TM and DS matters together. But then, and this would be in November, so we're now less than six months out from the answer, they discovered the termination notice, which, and I would commend the court's review of it's common law record at 214, and in terms of the basis for the confusion about that, is when you review that notice, you'll see the notice was only sent on behalf of Prairie Spine. It references in its ray line that it's terminating the relationship, the contract with Prairie Spine, and buried in the text of the notice, it also mentions Prairie Surgicare. So it wasn't, we didn't have what I'll call, pardon my common language, we didn't have a clean termination notice for Prairie Surgicare. That compounded the misunderstanding of the facts about the dates of the contracts and the dates that they were terminated. All of that was figured out by November, and at that point, my client tendered full relief to the plaintiff and took steps to separate the arbitration claim so that it was only DS, and at that point, as you've seen from the record, the Prairie Surgicare verisimply opposed getting paid 100% relief, and they sought to stop arbitration of the DS matter, and the briefing and argument that is very illustrative, what appears to us happened is that Prairie Surgicare decided to try to take advantage of these prior mistakes and to try to prevent the DS arbitration issue from going ahead. Well, was arbitration allowable under the contracts that you think apply? Because my understanding was arbitration was not even on the table in any of the contracts. No, Your Honor. There was an arbitration provision in both of the contracts. Are those the terminated contracts? Yes. However, the DS issue involves a payment that was made while the Prairie Surgicare contract was still in effect. So we have tight timing here. Let me explain. So both contracts were in February of 2016. In early February of 2018, while the Prairie Surgicare contract was still in effect, my client made the payments on patient DS by mistake of about $100,000 to Prairie Surgicare. That contract that was still in effect at that time had an arbitration provision, and in section 3.13 of that agreement had a provision that allowed my client to recover mistaken payments and other categories of payments of that ilk. And it also provided a right to offset for future payments received. So where's the good faith belief that with regard to the payments for TM, that dispute was subject to arbitration? That's what I'm not following here. So if you can help me out. Yes. Your Honor, the good faith, the belief was a mistaken one that the TM matter was arbitrable. And that was based on, as I mentioned, the circumstances of the termination notice from February of 2018 only specifically referenced Prairie Spine as the entity giving the termination notice. But at the conclusion of that notice said, also please remove Prairie Surgicare and Dr. Kuby, the owner of the two facilities who didn't sign any contract individually with my client. How long did it take for your client to realize that arbitration was not an option? On the TM matter, Your Honor? Yes. It took my client until November of after the promptly rectified that mistake. Okay. Thank you for clarifying that for me. Thank you. So again, while what we believe and what we think the trial court saw here is that there were reasonable reasons for confusion about the interplay of these two agreements, how and when they had been terminated, and what was in effect at the time of the two patient payments that were intertwined originally in this case. But in terms of the trial court's discretion under rule 137, Your Honor, what happened here and unlike the other cases, the very few cases where sanctioned denials have been reversed on appeal, what my client did is when it realized that confusion, it did the right thing. It tendered full payment. It separated the TM matter out of arbitration so that only the matter, and I'll finish my answer. I've hit the red clock. And so that only the matter that truly belonged in arbitration could proceed there that way. I thank you for your time and invite any further questions you have. When you say they tendered full payment, were there interest provisions in that as well? Yes, Your Honor. My client tendered full payment, which included statutory interest under the rule 137. And so, yes, Prairie Surgicare complained and opposed the amount of interest. But when you look at the final transcript in this case, Prairie Surgicare's counsel concedes that the interest that we tendered from the very beginning were the appropriate amount. Okay, thank you. Thank you very much. Your Honor, just to correct the record, Surgicare did tell Encompass that the agreements have been terminated and couldn't possibly apply to patient PS in August, on August 14, 2019. That's at C300. And the quote is, so both the charges for which the proceeds of the September 7, 2018 check were supposed to be applied and the check itself did not come into existence until after the agreement to your point, excuse me, after the agreement you point to was by your own admission terminated. And it's, you know, stepping back, we bought suit on a TS check. We let them know this agreement couldn't apply to TS. And yet, before they filed a single motion, is it TM or TS? I'm sorry, Your Honor. It's TM. I apologize. We often listen to these tapes after oral arguments. So thank you for clarifying. Thank you. And to address the discretion issue, as Berger points out, the trial court doesn't get complete latitude. It certainly doesn't, you know, mistake of law is an abuse of discretion, by definition, where no court could reasonably find, as Illinois law holds, that a mistake can override a duty to investigate. That's an abuse of discretion. That's what Berger and Fremick hold. Protracting a simple dispute is sanctionable. In fact, that's exactly what happened here. Had they done what they needed to do, and that this would have been, I think, as Fremick says, a trip to the court once. Now, to address that timeline, again, Encompass initiated the stop payment. They knew they had an issue since September 2018. They sent us correspondence. By the time we filed suit, they had had six months to investigate, and then another two months by the time the answer rolled around, and then what's June, July, August. So three more months when we expressly said, hey, look, cat's out of the bag. This stuff doesn't apply. You know, please answer discovery. And to say that they then immediately corrected their mistake is wrong. August 14, 2019 to November 14, 2019 is an additional three months. Sorry. So the timeline here is really over a year, and they were, keep in mind, in possession of the relevant facts. It's not our job, and we can't investigate their own case for them. We don't have access to it. Now, about patient BS. We always maintained, and maintained in the arbitration, patient BS was treated in 2012 and 2013, long before Encompass existed, long before any agreements were entered into. In other words, the obligation to pay for that So even with patient BS, no agreement could apply, and that was always our position, and that's why, ultimately, we argued the trial court had jurisdiction to decide everything. But as it relates to patient PM, it's kind of a red herring, because by and large, or far and away, I guess, no agreement could possibly apply to that patient. Well, the intertwining of those two patients, your client had nothing to do with that. That all came from... That's precisely right, Your Honor. We purposely filed suit for this alone. Yeah, that was the first mistake, that they were confusing accounts. Yes, exactly. I'm sorry. I didn't mean to interrupt. No, that's all right. I interrupted you. I do that way too often. So is your request for damages broken down in terms of damages for the litigation up to the point of compelling arbitration, and then after arbitration? Yeah. So, Your Honor, we actually just... Because we would have had to file a petition and all that, we started, I believe, from May, once we got their answer. Went through discovery, because obviously, they served a defense that was wrong, and so we had to do all that. And we went all the way up to, I believe, through November, until the tender was made. So I think we... I believe we stopped in November of 2015. I have... I'll look at the record. The bulk of the attorney's fees, did they occur before or after the motion to stay for purposes of arbitration? Before. The bulk of them were from... Okay. ...that made in November. I'm sorry. I just wanted to check to make sure. Oh, and one final point. Encompass has admitted in its brief that determination is... Did occur on that date, so there's no question there. In any event, I just want to conclude by asking this court to rule in Surgeon Kerr's favor and reverse the trial court's decision. Thank you, Your Honors. Thank you very much. The arguments are concluded. We'll be taking the matter under advisement and hopefully rendering a decision without undue delay. Thank you very much for your arguments.